UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

EMA FINANCIAL, LLC

                Plaintiff,

   -against-

PETRONE WORLDWIDE, INC. and PETRONE
FOOD WORK, INC.
              Defendant.

-----------------------------------------------------------X

**Oral Argument Requested.**

Hon. John F. Keenan

Case No.: 17cv8558

## DEFENDANT'S REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF MOTION TO DISMISS

Dated: March 16, 2018

**THE BASILE LAW FIRM P.C.**
Mark R Basile, Esq. [MB-2201]
400 Jericho Turnpike - Ste. 104
Jericho, New York 11753
Tel. 516.455.1500
mark@thebasilelawfirm.com

*Attorneys for*
*Defendant (PETRONE)*

# TABLE OF AUTHORITIES

*Abir v. Malky, Inc. (In re Abir)*,
No. 09 CV 2871 (SJF), 2010 U.S. Dist. LEXIS 28471 (E.D.N.Y. Mar. 22, 2010) ...............8

*Aquila v. Rubio*,
2016 NY Slip Op 50682(U), 51 Misc. 3d 1217(A), 38 N.Y.S.3d 830 (Sup. Ct.) ……………. 3

*Beaufort Capital Partners, LLC*,
2017 U.S. Dist. LEXIS 32335……………………………………………………………2-3

*Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*,
2013 NY Slip Op 1483, 105 A.D.3d 178, 961 N.Y.S.2d 86 (App. Div.)…………….……3-9

*Curtiss v. Teller*,
157 A.D. 804, 143 N.Y.S. 188 (App. Div. 1913)……………………………………………8

*Fareri v. Rain's Int'l, Ltd.*,
187 A.D.2d 481, 589 N.Y.S.2d 579 (App. Div. 1992…………………………………….8

*Funding Grp., Inc. v. Water Chef, Inc.*,
2008 NY Slip Op 28069, 19 Misc. 3d 483, 852 N.Y.S.2d 736 (Sup. Ct.)……………………7

*Hammond v Marrano*,
88 AD2d 758 [1982]…………………………………………………………………………7

*Hillair Capital Invs., L.P. v. Integrated Freight Corp*
963 F. Supp. 2d 336 (S.D.N.Y. 2013)……………………………………………………4-6

*Hufnagel v. George*,
 135 F. Supp. 2d 406, 408 (S.D.N.Y. 2001)…………………………………………………..2

*In re Estate of Jackson*,
120 A.D.2d 309, 508 N.Y.S.2d 671 (App. Div. 1986) ……………………………………… 3

*LG Capital Funding, LLCv. Sanomedics Int'l Holdings, Inc.*,
2015 NY Slip Op 32232(U) (Sup. Ct)…………………………………………………………..3

*Merch. Funding Servs., LLC v. Volunteer Pharmacy Inc.*
55 Misc.3d 316 (N.Y.Sup.,2016)……………………………………………………………..3

*Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P. (In re Bridge Info. Sys.)*,
 311 B.R. 781 (Bankr. E.D. Mo. 2004)………………………………………………………4

*Phlo Corp v. Stevens,*
*00 Civ. 3619 (DC),* 2001 U.S. Dist. 17490, at *12 (S.D.N.Y. Oct. 25, 2001)……………..4-6

*Quackenbos v Sayer,*
62 N.Y. 344 (NY Ct. of Appeals, 1875)……………………………………………………10

*In re Rosner,*
48 B.R. 538 (Bankr. E.D.N.Y. 1985)……………………………………………………..8

*Rothstein v. Isolation Film LLC,*
2017 U.S. Dist. LEXIS 59133, at *4 (S.D.N.Y. Mar. 22, 2017)…………………………….8

*Sabella v. Scantek Med., Inc.,*
2009 U.S. Dist. 88170 (S.D.N.Y. Sep. 21, 2009)………………………………………4-6

*Szerdahelyi v. Harris,*
67 N.Y.2d 42, 499 N.Y.S.2d 650, 490 N.E.2d 517 (1986)………………………………..9

*Union Capital LLC v. Vape Holdings, Inc.,*
2017 U.S. Dist. LEXIS 60445 (S.D.N.Y. 2017)………………………….………..2,3,8

*Venables v. Sagona,*
2011 NY Slip Op 5261, 85 A.D.3d 904, 925 N.Y.S.2d 578 (App. Div.)…………………..8

**TABLE OF CONTENTS**

I. TABLE OF AUTHORITIES……………………………………… …..……..……....ii

II. INTRODUCTION………………… ………………… …………… ……………...…1

III. ARGUMENT………………………  ………..…… ……………….....………. ..…1

    A.  GENERAL OBLIGATIONS LAW §5-511 APPLIES TO DETERMINE WHETHER THERE WAS A VIOLATION A PENAL LAW  §190.40. ……....1

    B.  THE DISCOUNTED CONVERSION RATE UNDER THE NOTE IS INCLUDED AS INTEREST………………………..…….………………2-7

    C.  THE SHARE RESERVE IS INTEREST………………….…………………7-8

    D.  USURIOUS INTENT IS IMPLIED AS A MATTER OF LAW……… ... ..…..9

    E.  NO EQUITABLE RELIEF FOR USURIOUS TRANSACTIONS BECAUSE CRIMINALLY USURIOUS LOANS ARE VOID…………………………………………………………..…….. …..…..10

    F.  DEFENDANT'S REQUEST FOR CERTIFICATION OF ORDER IS PROPER………..………………………….…………………..…………...…10

IV. CONCLUSION………………………………………………. ……………… … 10

# INTRODUCTION

Defendant, PETRONE WORLDWIDE, INC. ("Defendant" or "PETRONE"), by and through undersigned counsel, respectfully submits this Reply to Plaintiff, EMA FINANCIAL, LLC ("EMA" or "Plaintiff") Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c). Defendant will further demonstrate that the Plaintiff's complaint fails to state a cause of action upon which relief can be granted because the Note subject to this litigation charges a criminally usurious rate of interest in violation of Penal Law §190.40, and is therefore *void ab initio* pursuant to General Obligations Law §5-511. ("§5-511"). In its Opposition Brief, Plaintiff is relying on the misapplication and improper reading of the New York usury statutes and continually fails to recognize that the only relevant time in a usury analysis is at the inception of the loan. Furthermore, plaintiff knowingly disregards and misconstrues recent decisions rendered in this district that clearly held default obligations count towards interest calculations for purposes of determining usury. It is well founded that the requisite intent for a finding of usury is implied as matter of law when usury can be gleaned from the face of the note. With proper application of the body of New York usury law, the court will find that any value reserved or taken at the time of the inception of the loan is considered interest for usury purposes, including discounted conversions, default interest rates and reservation of shares.

# ARGUMENT

## A. GENERAL OBLIGATIONS LAW §5-511 APPLIES TO DETERMINE WHETHER THERE WAS A VIOLATION OF PENAL LAW §190.40.

Plaintiff argues that General Obligations Law §5-511 ("§5-511") does not apply to a criminally usurious note because a corporation is prohibited by the statute from bringing a defense of civil usury. Defendant has already addressed the confusion surrounding the issue of whether criminally usurious contracts are void, which stems from the fact that prior decisions have improperly categorized usury into two "types." (*See* DKT #23, Defendant's Motion to Dismiss). Without an application of §5-511 to §190.40, there would be no statutory guidance to determine what constitutes a criminally usurious rate.

Plaintiff directs the attention of this court to a recent decision by Judge Marrero, holding that §5-511 is part of the civil usury statute and therefore inapplicable to a criminal usury analysis.

1

(See *Adar Bays v. Aim Exploration*: 1:17-cv-1290-VM, DKT#39).[1] However, Plaintiff failed to provide this court with the whole record of that case. In response to Judge Marrero's order, Defendant's counsel applied for permission to take an Interlocutory Appeal because Judge Marrero's decision incorrectly held that §5-511 does not apply to §190.40. (Id. at DKT #43) However, other judges have held that §5-511 does apply to 190.40, including the Chief Judge of this District (Colleen McMahon). See *Hufnagel v. George,* 135 F. Supp. 2d 406, 408 (S.D.N.Y. 2001).

Notably, the Chief Judge of this very district, Judge Colleen McMahon, had originally thought the same as Plaintiff in this case, as well as Judge Marrero in *Adar Bays v. Aim Exploration*, but shortly after, reversed her own finding because she misapplied the law, making the same mistake in failing to apply §5-511 to a criminal usury analysis. After awarding summary judgment on liability to the Plaintiff in that case, realizing she made the mistake, Judge McMahon requested additional briefing and reversed herself in a subsequent opinion and order finding that §5-511 applies to a criminal usury analysis under Penal Law §190.40. *Hufnagel v. George,* 135 F. Supp. 2d 406, 408 (S.D.N.Y. 2001). Of course §5-511 applies to analysis under §190.40 to determine whether or not the terms of the transaction exceed §190.40 usury limits. Here, the proper application of §5-511 makes it clear that the substance of the note in question reflects a criminally usurious rate of interest through mechanisms such as default interest rates, reservation of shares and discounted conversion rights established at the time of the commencement of the loan. Therefore, the note must be found criminally usurious and void.

B.  **THE DISCOUNTED CONVERSION RATE UNDER THE NOTE IS INCLUDED AS INTEREST.**

This transaction is simply a loan subject to usury laws. At the time the transaction was entered into, EMA reserved to itself an exclusive option to compel repayment of the loan in the form of discounted stock. (DKT #1, Ex. B, ¶ 1.1). Citing *Union Capital* and *Beaufort* , Plaintiff argues that the conversion option is too uncertain to incorporate into an interest rate calculation and that "at the time of conversion, the transaction becomes an investment, not subject to usury

---

[1] Judge Marrero said in his order that the application of §5-511 to criminal usury is an unsettled area of law. Judge Marrero's decision goes against the majority of cases, holding that §5-511 applies to criminal usury.(see Addendum A)

2

laws." (DKT #26, pgs. 5 and 12). *Union Capital LLC v. Vape Holdings, Inc.*, 2017 U.S. Dist. LEXIS 60445 (S.D.N.Y. 2017) See also: *Beaufort Capital Partners, LLC*, 2017 U.S. Dist. LEXIS 32335 *6. However, Plaintiff, as well as the court in *Union Capital* and *Beaufort*, incorrectly determined the nature of the discounted option at the time of conversion, rather than at the time the transaction was entered into as required by §5-511. Hence, those decisions do not reconcile with the specific language of the usury statutes. The courts in those cases improperly examined the option to convert into stock in the context of some time in the future ignoring the statutory requirement to look at it at the time the loan was made. (*See In re Estate of Jackson,* 120 A.D.2d 309, 508 N.Y.S.2d 671 (App. Div. 1986) (held that the usurious nature of a contract is determined at the time it was entered into). id.  See also *Aquila v. Rubio*, 2016 NY Slip Op 50682(U), 51 Misc. 3d 1217(A), 38 N.Y.S.3d 830 (Sup. Ct.) (affirming decision in *In re Estate of Jackson* that usury is to be determined as of the time that the contract or obligation is entered into) id.

The difference between a loan and an investment lies in the **degree of risk** assumed by the party initially parting with money. *Merch. Funding Servs., LLC v. Volunteer Pharmacy Inc.* 55 Misc.3d 316 (N.Y.Sup.,2016).*(emphasis added)*( held a transaction which constitutes a loan must include a borrower and a lender, and a fixed sum that is payable absolutely.) A person who lends money assumes only the minimal, ordinary risk of nonpayment due to death or insolvency of the borrower. *Id.* See also *72 NY Jur 2d Interest and Usury, §87.* There is very little risk associated with an option to force repayment from a reserved amount of shares at a discounted price to satisfy a debt because lender always receives the value of the stated discount percentage increase beyond the 100% repayment of the portion of the principle converted. Defendant maintains that the discounted conversion rate granted at the time the loan is entered into is not an investment, but merely an option to compel repayment carrying an illegal rate of interest hidden in the 45% discount.  Most courts agree that initially these transactions are loans  because no investment decision has been made at the time the loan was entered into, rather it reserved itself the option to be repaid in stock, after which the lender becomes an investor. *LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.,* 2015 NY Slip Op 32232(U) (Sup. Ct., New York, 2015) (held that a convertible note transaction starts out as a loan). Again, the usury statutes requires the court to examine the transaction at the time is was entered into, not some future speculative time. Any decision otherwise would render *In Re Jackson* , and the usury laws, ineffective.

For the sake of analysis, let's assume the lender becomes an investor after conversion. This only demonstrates lender's intent to become an investor only as to the portion of the principle converted, at the time of conversion. This is where the decisions in *Union* and *Beaufort* went astray. Legally, the balance due under the note and its terms remain the same, because a conversion of less than the full amount does not change the note's stated maturity date and repayment of the balance remains absolute. Therefore, the criminal usury limits apply because plaintiff has the right to force repayment in the form of stock, in which it receives 145% of the value of the retired principle and interest being converted under the note, each time Plaintiff converts. This right was created at the time the transaction was entered into. (DKT #1, Ex. B). *Peltz v. Welsh, Carson, Anderson & Stowe VII, L.P. (In re Bridge Info. Sys.),* 311 B.R. 781 (Bankr. E.D. Mo. 2004) (held that in valuing the worth of the option, it was irrelevant what happened subsequent to the "transfer" of the option; the court properly noted that it must examine the transaction at the time when the option was created).

      The Appellate Division 1st Department found and held that a loan is usurious when the lender is entitled to the principal balance, along with a legal rate of interest, plus *additional payment contingent* on an event that is out of borrower's control. *(Blue Wolf Capital Fund II, 961 N.Y.S.2d 86 at 89* (held that Blue Wolf's option to invest in the future at a discounted rate is considered interest.); *See also: Phlo Corp v. Stevens, 00 Civ. 3619 (DC),* 2001 U.S. Dist. 17490, at *12 (S.D.N.Y. Oct. 25, 2001) (noting that this "contingent right," referring to stock option, is something of value and should be considered in interest calculation); *See also: Hillair Capital Invs., L.P. v. Integrated Freight Corp.,* 963 F. Supp. 2d 336 (S.D.N.Y. 2013) (held that value of stock is critical in calculating true amount of loan as well as effective interest rate); *See also, Sabella v. Scantek Med., Inc.,* 2009 U.S. Dist. 88170 (S.D.N.Y. Sep. 21, 2009) (affirming holding that value of common stock given to lender should be taken into account when calculating interest rates.) It is undisputed that Plaintiff's right to repayment by compelling the company to issue stock is in the complete and unilateral and exclusive control of the Plaintiff because Plaintiff has the exclusive right to convert at the discounted price at any time and receive 45% more value than the principle it converts, regardless of the price of the stock on the date of conversion. Yet, citing *Phlo Corp.,* Plaintiff contends that discounted conversion rights are not included as interest because the value of the stock is too uncertain. It is important for this court to distinguish between the type of property being reserved, to the concept of reserving the right to

receive value of property exceeding the legal usury limits. While *Blue Wolf* dealt with a cash deposit, that cash deposit was in the sole control of the lender, and the court concluded that the amount reserved will be applied to interest in a criminal usury analysis. The concept of a contingency that "could provide additional consideration for the loan in the exclusive control of the lender" is exactly what *Blue Wolf* stands for. The quality of the property (cash or stock) is irrelevant. What is relevant is the value or percentage of the loan that the property represents. *Phlo is* distinguishable because in that case it was the borrower's option to extend of the term of the note, which triggered the borrower's obligation to issue the warrants. *Phlo Corp. v. Stevens,* U.S. Dist. LEXIS 17490 (S.D.N.Y. Oct. 25, 2001). Therefore, in that case, the additional payment of interest was not in the exclusive control of the lender, nor was it contingent of an event out the borrower's control, as it is here. *Id.* In this case, the percentage is fixed and is not speculative and designed solely for EMA to receive 45% in value of property to retire the debt.

      In its Opposition Memo, Plaintiff also attacks the applicability of *Hillair Capital Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336 (S.D.N.Y. 2013) by attempting to distinguish it from the present case on the grounds that *Hillair* did not involve a loan where stocks were delivered in conjunction with, rather than in lieu of, other forms of repayment. This is merely an attempt by plaintiff to again misdirect this court. The *Hillair* court held that the value of the stock is included in an interest calculation. *Id.* Whether the stock was transferred at the time of the loan closing, as in *Hillair* ,or reserved for future conversions as it is here is irrelevant because the net effect is the same so long as the lender is entitled to some payment, that exceeds the legal rate of interest, and that the payment, at the sole option of the lender, is contingent on an event out of the borrowers control. In both scenarios, property or value is taken or reserved at the time of the loan. Regardless of whether the discount is taken in lieu of other interest, or in conjunction with the stated interest rate, Plaintiff charges a criminally usurious rate by reserving to itself a discount to market of 45% that it can compel Defendant to use to repay the loan. Plaintiff's distinction makes our reference to *Hillair* inapplicable without an explanation. *Id.*

      Plaintiff applies this same conclusory reasoning to *Sabella v. Scantek Med. Inc.*, 2009 U.S. Dist. 88170 (S.D.N.Y. 2009). If the court held that *Hillair* and *Sabella* constituted situations where the value of the sold stock is critical, it must logically be even more so in the present case when there is a fixed discount attached to all such stock reserved for conversions under the note.

5

Plaintiff's analysis fails to recognize that a key distinction between the aforementioned cases and the present is that EMA has the sole right to effectuate a conversion and always receives a 45% original issue discount (OID) on each conversion of debt into stock, for the repayment of the loan, *no matter what the stock price is at the time.* (*Emphasis added.*) Defendant is at the complete mercy of plaintiff since EMA can unilaterally submit a conversion request at any time, and for any amount of the principal balance, and receive 45% more than the payment of actual principle plus the stated interest. If plaintiff were truly investing in Defendant's stock, then EMA would have proceeded to purchase the actual stock from defendant in the same manner as in *Hillair* and *Sabella* (A fixed number of shares directly through the company). Instead, the documents create an elaborate financial scheme that guarantees them a fixed OID and rate of return of 45% via the unilateral and exclusive conversion right every single time it is exercised to pay back the indebtedness. The court in *Hillair* noted, "The value of the sold stock therefore is critical to calculating the initial loan amount and thus the interest rate." *See* Hillair Capital Invs., L.P. 963 F. Supp. 2d 336; *See also*: Sabella v. Scantek Med., Inc., 2009 U.S. Dist. 88170.

  Plaintiff's assertions of circumstances under which Plaintiff could realize no profit from the discount is illusory because repayment of the loan occurs upon conversion. Whatever happens afterwards is between the Plaintiff and the public markets, not between the Plaintiff and the Defendant. Defendant is legally bound (compelled) to provide such repayment in the form of discounted stock that gives Plaintiff 145% of the amount converted. Plaintiff will always receive repayment of 45% more on each dollar that it converts into stock under the note regardless of the price of the stock on the day of conversion, because at the time the loan was made, it reserved to itself 45% more than the actual value of the stock on any given day, therefore insulating itself from all risk.

  Under *Phlo*, *Hillair*, and *Sabella,* the 45% fixed discount reserved to plaintiff at the time the loan was created, and taken at every conversion, constitute additional interest charges. As in *Blue Wolf,* the 45% discount here is merely a "disguised" form of interest, evident by the fact that plaintiff is entitled to the return on his principal balance, legal interest, and additional payment of 45% via the discount, at the sole discretion of plaintiff. The fact is, Plaintiff will always receive 45% more on any and all conversions of the debt into equity. Plaintiff wants to re-direct the court to events that "may" happen in the future instead of looking at the point in time the statute requires. The reservation of shares and option to convert at a later time for a

discounted price is created at the time of the loan, and is not an investment, but an option for repayment of the principle of the loan for an interest rate well above the legal amount.

### C. THE SHARE RESERVE IS INTEREST

Plaintiff argues that the share reserve is not charged to Defendants because the shares are placed in the control of "Defendants' own agent" and the shares would only be delivered to EMA if it exercises its conversion right. However true the mechanics may be, the irrevocable transfer agent letter (DKT # 25, Ex. A) reserves shares (property of a greater value than the loan) at the time of the inception of the loan, which are included as interest because the purpose of the reservation is to ensure repayment of indebtedness at a discount until the debt is satisfied by cash payment or conversion of shares. The reservation of shares, at the time that a loan was made also renders a loan criminally usurious. *See Funding Grp., Inc. v. Water Chef, Inc.,* 2008 NY Slip Op 28069, 19 Misc. 3d 483, 852 N.Y.S.2d 736 (Sup. Ct., New York, 2008); *See also Hammond v Marrano,* 88 AD2d 758 [1982]). **(**held that the showing of a letter agreement which reserves to the lender an illegal rate of interest satisfies defendant's burden of proving a usurious loan.")

The note itself required defendant to set aside, and unconditionally reserve to the Plaintiff, shares of its stock to cover the entire balance and interest under full conversion of the note. (See DKT # 1, Ex. B at ¶1.3). The irrevocable transfer agent letter effectively sequestered and *reserved* that stock, on behalf of Defendant, to make it available on account for Plaintiff to effectuate future conversions of the loan into equity for purposes of repayment. The §5-511 usury statute's specific language states "reserves or agrees to reserve to the lender". The quantity of stock so reserved is enough that plaintiff could convert the entire principle at a fixed 45% discount to market. This court must recognize that the reservation of shares in ¶1.3 alongside the price of those shares stated in ¶1.2 of the note constitutes interest and thus must be computed together with all other interest charges that plaintiff has embedded within the Note. In accord within the specific language of §5-511, it is perfectly clear that Plaintiff reserved to themselves a "greater sum" for the loan issued to defendant by taking a 45% discount, making Defendant a sitting duck because the option is in the exclusive control of Plaintiff.

This reasoning is no different than legal reasoning of Blue Wolf even though the type of interest reserved in Blue Wolf was cash, we need not concern ourselves with the form in which the interest took place. Opposing counsel wants to misdirect the Court's focus on the form of

7

interest rather than the effect of that reserved interest. Whether taking the form of cash or stock (as in *Funding Group, Inc. v. Water Chef, Inc.,* 19 Misc.3d, 852 N.Y.S.2d 736 (New York County, 2008), the reserved interest is still physical property which is in the exclusive control of the lender, to exercise at lender's leisure. Lord Mansfield in 1754 would not agree that lenders may use this genius mechanism to circumvent the usury laws and receive at their exclusive option, the usurious rates reserved by them at the commencement of the transaction; and neither should this court today. Use of such a mechanism allows Plaintiff to prematurely secure repayment in an alternative manner, inclusive of the repayment expected on the face of the loan. Taking such a reserved interest (irrespective of the form) proves no intent to take risk on the Lender's end of the deal. With no risk of repayment between the borrower and lender, the usury laws are then applicable by statute (§5-511)**.** The act of reserving stock at a 45% discount alone, places Plaintiff well over the permissible 25% cap as set by the criminal usury laws. The reservation of shares under the note prevents the defendant access to its use and enjoyment. Therefore, the reservation of shares represents the value of property of the Defendant that was reserved exclusively to the Plaintiff, and the genius mechanical aspect of those shares being held by the defendant's transfer agent does not shield those shares from a usury analysis because this court is required to look at substance over form in a usury analysis.

**D. USURIOUS INTENT IS IMPLIED AS A MATTER OF LAW.**

Usurious intent is easily determined in this case as a matter of law by simply looking at the four corners of the Note. *Blue Wolf Capital Fund II, L.P.* (held that if usury can be gleaned from the face of an instrument, intent will be implied as a matter of law.) It is well-established that if the note charges an interest rate in excess of the statutory rate, then it is immaterial whether lender intended to violate the usury laws or not. Courts have consistently ruled that when usury is determined to exist, that intent is implied. *In re Rosner,* 48 B.R. 538 (Bankr. E.D.N.Y. 1985*) See also* *Fareri v. Rain's Int'l, Ltd.,* 187 A.D.2d 481, 589 N.Y.S.2d 579 (App. Div. 1992*);* *Venables v. Sagona,* 2011 NY Slip Op 5261, 85 A.D.3d 904, 925 N.Y.S.2d 578 (App. Div., 2008)*; See also* *Abir v. Malky, Inc.,* 2010 U.S. Dist. LEXIS 28471 (E.D.N.Y. Mar. 22, 2010)*;* *Curtiss v. Teller,* 157 A.D. 804, 143 N.Y.S. 188 (App. Div. 1913)*;* *Rothstein v. Isolation Film LLC,* 2017 U.S. Dist. LEXIS 59133, at *4 (S.D.N.Y. Mar. 22, 2017). Plaintiff cites a case from this court, which held that the note was not usurious on its face, because the court only

8

considered the stated interest rate, and disregarded the other forms of interest present within the four corners of the document. *Union Capital LLC,* U.S. Dist. LEXIS 60445, at *10. Although Plaintiff failed to call it interest, the "conversion discount option" (45% of market price) (DKT # 1, Ex. B, ¶ 1.2) and "share reserve requirement" (DKT # 1, Ex. B, ¶ 1.3) as well as the "Default Remedies," (DKT #1, Ex. B, Art. III) are expressly stated on the face of the note, and charge to the defendant an interest rate well above the allowed 25%. (DKT #1, Ex. B). Just by looking at the definitive terms of the document, usurious rates are evident. The terms of the note are not contested, nor are they ambiguous because no interpretation or extrinsic evidence is necessary. Plaintiff tries to evade the critical element of intent in a usury analysis by relying on the fact that its disguised interest charges are not explicitly stated as "interest" and thus claim they are not subject to usury. The investment narrative promoted by Plaintiff fails. Plaintiff's attempt to disguise interest under the terms of the note fails. Plaintiff's entire argument is yet another attempt to misguide the court, and evade consequences of usury violation, while still charging, reserving and taking usurious amounts of interest from their borrowers. Plaintiff's intent to charge a criminally usurious rate is easily gleaned from the four corners of the Note and the amounts it has charged, taken or reserved to itself by contract within the meaning of the usury statutes as it did in *Blue Wolf.*

D. **NO EQUITABLE RELIEF FOR USURIOUS TRANSACTIONS BECAUSE CRIMINALLY USURIOUS LOANS ARE VOID.**

It is well settled law that a person coming to court with unclean hands is not afforded any equitable remedies" *Blue Wolf Capital Fund II, L.P.* (held that those found to be charging criminally usurious rate of interest are not entitled to any form of equitable relief). This point has been thoroughly argued in Defendant's Motion to Dismiss (DKT # 23, pgs. 6-9). New York is clear on its position regarding usury, and the language in *Szerdahelyi* supports that forfeiture is necessary to deter the "evils" of modern day loan-sharking. The statutes are specifically drafted and enacted to punish the lender that lends at a usurious rate. Any decision allowing any lender that violates the usury laws of New York to be made whole via an equitable remedy would render the legislative intent superfluous.

**F. DEFENDANT'S REQUEST FOR CERTIFICATION OF ORDER IS PROPER.**

Defendant asks for certification as part of our motion because many judges feel that the law is unsettled. In order to preserve rights to appeal an interlocutory order, such a request is made in the motion papers or made separately within a reasonable time after the decision is entered.  Because many Judges, such as J. Marrero feel the law is unsettled, a higher courts determination is necessary.

## CONCLUSION

The transaction underlying this lawsuit is simply a loan that requires absolute repayment of a sum certain on an established due date. Repayment in this case is made by delivering stock at a value of 145% more than the principle plus stated interest. Plaintiff wants to eat its cake and have it too by misleading the court using documents as a slight of hand trick to convince the court that the 145% of value in property received on each conversion does not count as interest, let alone effectuates repayment under the note. That's absurd. It most certainly does. The usurious rate of interest is gleaned from the four corners of the note, and intent to charge such a rate is implied as a matter of law. The laws of usury have been on the books in New York since it was a colony. The New York State Legislature has made those laws more effective over time with greater punishments for usury. The current usury laws in New York are some of the strongest and foreboding in the nation, reflecting the principals adopted by this state going back to Lord Mansfield from the Kings High Court in England, in the mid to late 1700's. The New York State Court of Appeals was keenly aware of this more than 142 years ago and stated, "*The shifts and devices of usurers to evade the statutes against usury, have taken every shape and form that to wit of man could devise, but none have been allowed to prevail.  Courts have been astute in getting at the true intent of the parties, and giving effect to the statute*". Quackenbos v Sayer, 62 N.Y. 344 (NY Ct. of Appeals, 1875*)*. The above passage resonates as much today, as it did 142 years ago. While complicated loan structures and misdirected nomenclature are apparent in todays business transactions, at the end of the day, a simple basic analysis, premised on legal principles that have been around for centuries, will result in this court finding that this is nothing but a usurious transaction from which there is no recovery at all available to plaintiff.  Therefore, the court should grant defendants motion to dismiss pursuant to FRCP 12(c), as a matter of law,

10

because the transaction charges a rate of interest in violation of Penal Law 190.40, and that the underlying transaction and all related documents are void as a matter of law pursuant to §5-511.

Dated:  March 16, 2018
       Jericho, New York

               Respectfully Submitted,

               **THE BASILE LAW FIRM P.C.**

               _____/S/_____
               Mark R. Basile, Esq. (MB2201)
               THE BASILE LAW FIRM P.C.
               *Attorneys for Defendants*
               400 Jericho Turnpike., Ste. 104
               Jericho, New York 11753
               Tel (516) 455-1500
               Fax (631) 498-0478
               mark@thebasilelawfirm.com

## CERTIFICATE OF SERVICE

I, Mark R. Basile, do hereby certify that on March 16, 2018, a true and correct copy of the foregoing document was electronically filed and served. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF System.

               _____/S/_____
               Mark R. Basile, Esq. (MB2201)

# ADDENDUM A

| **VOID under §5-511 –** <br><br>**20 Cases** <br>7 NY Sup. Ct. Cases <br>4 Fed. Ct. Cases <br>8 NY App. Div. Cases <br>1 NY Ct. of Appeals Case | **NOT VOID under §5-511** <br><br>**5 Cases** <br>1 NY Sup. Ct. Case <br>4 Fed. Ct. Cases <br>0 NY App. Div. Cases <br>0 NY Ct. of Appeals Cases | **DISMISSED CASE §190.40** <br><br>**5 Cases** <br>2 NY Sup. Ct Cases <br>3 Fed. Ct. Cases <br>1 2nd Cir. Ct. Appeals Case |
|---|---|---|
| Bales v. Pfeifer, Sup. Ct.- (Nassau -2005) | Carlone v. Lion & The Bull Films, Inc. S.D.N.Y.- (2012) | Bakis v. Levitin, Sup. Ct. – (2004) |
| Hufnagel v. George Fed-S.D.N.Y. (2001) | Koenig v. Salazer Enters Sup. Ct.- (2009) | Am. Equities Group, Inc. v. Ahava Dairy Prods. Corp. S.D.N.Y.- (2004) |
| Szerdahelyi v. Harris N.Y2d (NY Ct. of App-1986) | Cousins v. Pereira (In re Cousins) S.D.N.Y. - (2010) | Phlo Corp. v. Stevens, S.D.N.Y.- ( 2001) |
| Rothstein v. Isolation Film LLC S.D.N.Y. - (2017) | In re Merhi Bankr. E.D.N.Y.- (2014) | Brodie v. Schmutz (In re Venture Mort. Fund, L.P.) Fed. Ct.)- 2d Cir. (2002) |
| Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc. (App. Div.1st Dept.-2013) | BH Sutton Mezz LLC v. Sutton 58 Assocs. LLC (In re BH Sutton Mezz LLC) U.S. Bankr. S.D.N.Y. -(2016) | Funding Grp., Inc. v. Water Chef, Inc. Sup. Ct.- (New York - 2008) |

| | | |
|---|---|---|
| Bakhash v. Winston (App. Div.- 1st Dept.–2015) | | |
| In re Rosner, Bankr. E.D.N.Y.- (1985) | | |
| Densen v. Ahsley Sup. Ct.- (2011) | | |
| Fareri v. Rain's Int'l, Ltd. (App. Div. 2nd Dept.- 1992) | | |
| Murlar Equities P'ship v. Jimanez. Sup. Ct. (Bronx - 2016) | | |
| Manganello v. Park Slope Advanced Med. PLLC Sup. Ct.- (Suffolk - 2014) | | |
| Sasidharan v. Piverger Sup. Ct.- (Kings - 2014) | | |

| | | |
|---|---|---|
| Hammelburger v. Foursome Inn, 54 N.Y.2d 580, 431 N.E. 2d 278, 446 N.Y.S. 2d917 (1981) | | |
| Abir v. Malky, Inc. App. Div, 2nd Dept..-(2009) | | |

13

| | | |
|---|---|---|
| Malespin v. AB N.Y.S.2d Civ. Ct.-(2005) | | |
| Russkaya Reklama, Inc. v. Milman N.Y.S.3d App. Div. 2nd Dept. - 2015) | | |
| Case Cash Funding, LLC v. Gilberg, (App. Div. 2nd Dept.-2017) | | |
| Venables v Sagona (App. Div. 2nd Dept. -2011) | | |
| *Pearl Capital Rivis Ventures LLC v. RDN Construction Inc.*, 2016 N.Y. Slip Op 26344, 54 Misc.3d 470, 41 N.Y.S.3d 397 (Sup. Ct., Westchester, 2016) | | |
| Merchant Funding Servs., LLC v. Volunteer Pharm. Inc., | | |
| | | |